**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**UNITED STATES OF AMERICA,**

**v.**                                                    **No. SA-20-CR-00334-JKP**

**ALBERT RAMOS RAMIREZ JR.,**


**O R D E R**

Before the Court is Defendant Albert Ramos Ramirez, Jr.'s Motion to Suppress Evidence. *ECF No. 32*. For the reasons set forth below, the Court denies the motion.

**I. BACKGROUND**

On the evening of December 6, 2019, Officer Christopher Copeland stopped Mr. Ramirez for rolling a stop sign. When he was stopped, Mr. Ramirez had just pulled into the driveway of his mother's home and gotten out of the truck he was driving. The truck was parked part-way into the driveway, having stopped just before the padlocked gate, which was part of a fence that surrounded the home. Immediately upon approaching Mr. Ramirez, Officer Copeland handcuffed him, patted him down, and removed the property in Mr. Ramirez's pockets; Officer Copeland advised Mr. Ramirez he was stopped because he ran a stop sign and placed him in the back of his patrol vehicle; Officer Copeland then asked Mr. Ramirez for permission to search his truck, which Mr. Ramirez gave.

A few minutes after Officer Copeland initiated the stop, additional officers arrived, including Officer Cahill. The officers thoroughly searched the truck and found nothing. At that point, Officer Copeland asked Officer Cahill to reach through the locked gate to retrieve a jacket on top of the far end of a recycling bin. Officer Cahill reached through the locked gate, grabbed

the jacket from the bin, and handed it to Officer Copeland. Officer Copeland searched the pockets of that jacket and found a gun. The charges in Count Two of the indictment followed.

Mr. Ramirez is charged in this case with violating 18 U.S.C. § 922(g) (felon in possession of a firearm). He moves to suppress all evidence and statements obtained as a result of what he alleges was an illegal seizure and search. He argues that the police officer who stopped his vehicle—Officer Copeland—lacked reasonable suspicion or probable cause to believe that illegal activity was afoot and that the warrantless search of the jacket in his mother's gated yard was done in violation of his rights secured by the Fourth Amendment. *ECF No. 32*. Mr. Ramirez also moves to suppress all statements made after Officer Copeland failed to properly Mirandize him.

The Court heard the arguments of Mr. Ramirez and the Government on July 8, 2021. Mr. Ramirez presented the testimony of investigator Craig Pair and introduced evidence that included the officers' disciplinary records and video reenactments of the traffic stop. *ECF Nos. 47, 49*. The Government presented testimony from San Antonio Police Department Officers Christopher Copeland and Ryan Cahill and introduced evidence that included the officers' body camera videos and Officer Copeland's in-car video from the night of Mr. Ramirez's arrest. *ECF Nos. 47, 48*. At the close of the hearing, the Court permitted supplemental briefing to be filed by dates certain. With the filing of said briefing, *ECF Nos. 53, 54*, the motion is ripe for ruling.

## II. Burden of Proof

The Fourth Amendment protects against unlawful searches and seizures and extends to brief investigatory stops of persons or vehicles that fall short of a traditional arrest. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)). Because Ramirez was seized without a warrant, the Government bears the burden to prove by a

preponderance of the evidence that the seizure complied with the Fourth Amendment. *United States v. Jeffers*, 342 U.S. 48, 51 (1951). Because "Fourth Amendment rights . . . may not be vicariously asserted," a Defendant must have standing to assert a violation of those rights. *Alderman v. United States*, 394 U.S. 165, 174 (1969); *Rakas v. Illinois*, 439 U.S. 128, 134 (1978). Standing to challenge the validity of a search is established by showing a "legitimate expectation of privacy" in the area or item searched. *United States v. Powell,* 732 F.3d 361, 374 (5th Cir. 2013).

## III. DISCUSSION

### A. Reasonable suspicion to conduct the traffic stop

The stopping of an automobile and subsequent detention of its occupants, even for a short period of time, is a seizure subject to Fourth Amendment protections. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). Whether a stop is violative of the Fourth Amendment depends upon its "reasonableness." *Ohio v. Robinette*, 519 U. S. 33, 40 (1996). In determining whether a stop was reasonable, courts analyze "whether the officer's action was justified at its inception." *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968). "For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Reasonable suspicion is "a particularized and objective basis for suspecting the person stopped of criminal activity." *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (quoting *U.S. v. Cortez*, 449 U.S. 411, 417–18 (1981)). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment

requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Sokolow*, 490 U.S. at 7).

Officer Copeland testified that he stopped Mr. Ramirez because he witnessed the truck Ramirez was driving roll a stop sign at the intersection of Ute and Mohawk. Officer Copeland testified that he turned onto Mohawk Street from Palo Alto Road. As he was driving along Mohawk, Officer Copeland testified that he turned off all external lights on his vehicle, intending to park and surveille the home at 201 Mohawk based on a BOLO. Instead, he sped down the street with his car still "blacked out" and initiated a traffic stop of a two-tone Dodge Ram that had just entered the driveway of 201 Mohawk Street. Officer Copeland testified that he was familiar with the neighborhood where the stop took place and knew there was a stop sign at the intersection of Mohawk and Ute. He testified that even though he was approximately 450 feet away and it was dark, he knew the truck rolled the stop sign based on the trajectory of the truck's headlights, his observation of the truck's progression, and the speed of the truck as it entered the intersection. None of the video evidence conclusively confirmed or denied Officer Copeland's testimony with respect to whether the truck rolled the stop sign. Mr. Ramirez's contention that he did not roll the stop sign was undermined by this exchange:

> Copeland: Know why I stopped you?
>
> Ramirez: [Verbal indication of "No"].
>
> Copeland: You didn't stop right here at this stop sign.
>
> Ramirez: Oh, I'm sorry. My bad.

Govt. Ex. 5, Copeland Bodycam, 02:57-03:01.

While the video evidence did not conclusively establish the reason for the stop, Officer Copeland's in-car (COBAN) video bolstered his testimony, which suffered credibility issues due

to his disciplinary record. Having carefully considered the testimony and exhibits, the Court finds Officer Copeland had reasonable suspicion to stop Mr. Ramirez for rolling the stop sign at Ute and Mohawk.

## B. Extension of the traffic stop

When the purposes of a valid traffic stop have been completed and an officer has either verified or dispelled his initial suspicions, the detention must end "unless there is additional reasonable suspicion supported by articulable facts." *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir.2006) (citations omitted). Reasonable suspicion to extend a traffic stop exists when the "detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the search and seizure." *Id.* Courts determine reasonableness by examining the totality of the circumstances existing at the time of the stop. *United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004) (en banc). Additionally, due weight is given to the factual inferences and deductions drawn by law enforcement officers, which are based on their collective experience and specialized training. *Id.* at 507.

Officer Copeland's bodycam video shows that he stopped his vehicle behind Mr. Ramirez, activated his emergency lights, and stepped out of his vehicle. *See* Govt. Ex. 5 at 00:50. Mr. Ramirez, having exited his truck, looked in the direction of Officer Copeland. *Id.* at 00:54. Mr. Ramirez turned from Officer Copeland and walked away, toward the front of the truck. *Id.* at 00:57. Officer Copeland testified that as Mr. Ramirez walked away, he tossed a jacket over the gate. Mr. Ramirez continued around the front of the truck toward the passenger's side of the truck, where he was standing when Officer Copeland reached him.

While the credibility of Officer Copeland was diminished due to his disciplinary record, which questioned the accuracy his report writing and contained a prior Fourth Amendment

violation, when viewed on a large screen, Officer Copeland's bodycam video shows that Mr. Ramirez is carrying a jacket when he walks away from Officer Copeland. *Id.* at 00:57-00:59. The audio projects a dog barking four times in quick succession and then, a distinct, "thud." *Id.* at 00:58-01:00. Mr. Ramirez does not have the jacket in hand when Officer Copeland reaches him on the passenger side of the truck. *Id.* at 1:05. The video evidence also shows Mr. Ramirez's passenger failing to obey Officer Copeland's directives to stay out of the truck. Therefore, taken together, Officer Copeland's testimony and his bodycam video support the conclusion that Mr. Ramirez's conduct in throwing the jacket over the gate and his passenger's continued attempts to access the cab of the truck justified extending the stop.

**C. Standing to challenge the search of the jacket**

A defendant seeking to suppress evidence under the Fourth Amendment must demonstrate that his or her individual rights were violated. *Rakas v. Illinois*, 439 U.S. 128, 134 (1978). This demonstration requires that a defendant show both a subjective expectation of privacy regarding the item searched and that the expectation of privacy is objectively reasonable. *United States v. Finley*, 477 F.3d 250, 258 (5th Cir. 2007); *United States v. Iraheta*, 764 F.3d 455, 461 (5th Cir. 2014). A person who voluntarily abandons his property has no standing to challenge its search. *United States v. Alvarez*, 6 F.3d 287, 289 (5th Cir. 1993). As the Fifth Circuit has explained:

> Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances existing at the time of the alleged abandonment should be considered. Police pursuit or the existence of a police investigation does not of itself render abandonment involuntary. The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.

*United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973) (internal citations omitted). Stated concisely, "[t]he test for abandonment is whether an individual has retained any reasonable expectation of privacy in the [discarded] object." *United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir. 1983).

As recited above, the evidence shows that Mr. Ramirez threw the subject jacket over the gate immediately after Officer Copeland stopped him. The Court thus concludes that Mr. Ramirez voluntarily abandoned the jacket. Accordingly, he had no reasonable expectation of privacy in the jacket and lacks standing to challenge its search.

**D. Defendant's statements**

The Fifth Amendment to the United States Constitution guarantees that no individual "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda*, the Supreme Court "established that the prosecution may not use statements stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *United States v. Bennett*, 626 F.2d 1309, 1311 (5th Cir. 1980) (citing *Miranda*, 384 U.S. 436, 444 (1966)). The Government has the burden to demonstrate that the officers warned the defendant "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed" and that the defendant made a voluntary, knowing, and intelligent waiver thereof. *See Miranda,* 384 U.S. at 444. Even though the Government need not demonstrate that the officers recited the warnings exactly as they appear in the *Miranda* decision, *see California v. Prysock,* 453 U.S. 355, 361 (1981), the rights required by *Miranda* must be reasonably conveyed, *Duckworth v. Eagan,* 492 U.S. 195, 203 (1989) (internal quotation marks omitted). In sum, officers must adequately

convey the substance of the rights articulated in the *Miranda* decision for a defendant's waiver of those rights to be valid. *Prysock,* 453 U.S. at 356 (rejecting the lower court's requirement "that the content of *Miranda* warnings be a virtual incantation of the precise language contained in the *Miranda* opinion").

The video evidence demonstrates that Officer Copeland did not properly Mirandize Mr. Ramirez. Govt. Ex. 5 at 36:57-38:15. Mr. Ramirez appears to be asleep when Officer Copeland begins to Mirandize him. Rather than rouse Ramirez, adequately inform him of his rights, and obtain a proper waiver, the officers joked and laughed and continued to administer the *Miranda* warnings despite his condition. Based on the video evidence, the Court cannot conclude that Mr. Ramirez made a knowing, intelligent, and voluntary waiver of his rights. Accordingly, statements Mr. Ramirez made after this point will be suppressed. Because the Government withdrew its challenge to the motion to suppress Mr. Ramirez's post-*Miranda* statements, *see ECF No. 54 at 7*, the motion to suppress these statements is MOOT.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Suppress Evidence (ECF No. 32) is **DENIED**. Based on the representations made in its briefing, the Government shall not introduce at trial any statements made by Defendant Ramirez following Officer Copeland's attempt to Mirandize him.

**It is so ORDERED this 19th day of July 2021.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**